## THORNTON ET AL. *v.* DUFFY ET AL., MEMBERS OF AND COMPOSING THE INDUSTRIAL COMMISSION OF OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 76.  Argued November 8, 1920.—Decided December 20, 1920.

1. The construction placed on the constitution and laws of a State by its highest court must be accepted by this court in determining their consistency with the Federal Constitution.  P. 368.

2. The right of a State to enforce a legitimate public policy includes the right to change and improve its regulations for that purpose, even to the making of changes which conflict with the arrangements and contracts made by individuals in reliance on previous regulations. P. 369.

3. The State of Ohio, in carrying out its policy of workmen's compensation (see *Jeffrey Manufacturing Co.* v. *Blagg*, 235 U. S. 571), first allowed employers, in certain cases, the privilege of paying directly to their workmen or their dependents the compensation provided by law, instead of contributing to the state fund established to insure such payments; but afterwards, acting under power reserved over the subject, it took away this privilege from employers who indemnified themselves by insurance.  *Held*, that the change did not impair the constitutional rights of property or of contract of an employer who had elected to take the privilege of direct payment and had insured himself with an insurance company before the change was made. P. 366.

99 Oh. St. 120, affirmed.

THE case is stated in the opinion.

*Mr. Judson Harmon* and *Mr. A. I. Vorys* for plaintiffs in error:

The legislature has the power to compel all employers to contribute to the state workmen's compensation fund, or it may provide the conditions upon which employers may pay into the state fund, and the conditions upon

which they may pay compensation directly to employees, but the desire, of an employer, who elects to pay compensation directly, to indemnify himself cannot be made the sole basis of a legislative classification of employers, distinguishing them as ineligible to pay compensation directly. Such basis of classification is not related to the purpose of the constitutional amendment and the workmen's compensation law. *Adams* v. *Tanner*, 244 U. S. 590; *State* v. *U. S. F. & G. Co.*, 96 Oh. St. 250; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis*, 165 U. S. 150; *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549; *Chicago* v. *Netcher*, 183 Illinois, 104; *Traux* v. *Raich*, 239 U. S. 33; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Chenoweth* v. *State Board*, 57 Colorado, 74; *Byers* v. *Meridian Printing Co.*, 84 Oh. St. 408; *Dunahoo* v. *Huber*, 185 Iowa, 753.

The legislature has no power to prohibit employers from insuring or indemnifying themselves against their liability to employees. Insurance is not inimical to public policy. *Phœnix Insurance Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312; *Allgeyer* v. *Louisiana*, 165 U. S. 578. Liability insurance is not inimical to public policy. *American Casualty Company's Case*, 82 Maryland, 535; *Kansas City &c. R. R. Co.* v. *Southern News Co.*, 151 Missouri, 373; *Breeden* v. *Frankford Insurance Co.*, 220 Missouri, 327; *Stone* v. *Old Colony St. Ry. Co.*, 212 Massachusetts, 459; *Rumford Falls Co.* v. *Casualty Co.*, 92 Maine, 574; *Hoadley* v. *Purifoy*, 107 Alabama, 276. Contracts indemnifying employers are not inimical to public welfare and the legislature cannot prohibit such contracts. *Adams* v. *Tanner, supra; Allgeyer* v. *Louisiana, supra; Dobbins* v. *Los Angeles*, 195 U. S. 223; *Yee Gee* v. *San Francisco*, 235 Fed. Rep. 757; *German Alliance Insurance Co.* v. *Kansas*, 233 U. S. 389; *Chenoweth* v. *State Board, supra; Wilson* v. *New*, 243 U. S. 332, 347.

Assuming, for the purpose of this branch of the argu-

ment only, that the state fund "insures" the compensation due to employees from employers, and, that the law may give the state fund a monopoly of such insurance and deny the right to issue such insurance to all others, still the State cannot abrogate existing insurance, valid when it was issued, *Bedford* v. *Eastern Building & Loan Association*, 181 U. S. 227; *American Building & Loan Association* v. *Rainbolt*, 48 Nebraska, 434; *McNamara* v. *Keene*, 98 N. Y. S. 860; *Industrial Building & Loan Association* v. *Meyers Co.*, 12 Arizona, 48; nor can it take away the right of the employer to procure other insurance by making contracts of insurance in other States, or by any other means over which the State has no control. *Stone* v. *Old Colony St. Ry. Co., supra; New York Life Insurance Co.* v. *Dodge*, 246 U. S. 357; *Allgeyer* v. *Louisiana, supra.*

Neither § 1465–69 nor § 1465–101, as amended in 1917, was intended to apply, and they do not apply to contracts theretofore made by employers. *Sturges* v. *Carter*, 114 U. S. 511; *Bernier* v. *Becker*, 37 Oh. St. 72; *Kelley* v. *Kelso*, 5 Oh. St. 198; *State* v. *Creamer*, 85 Oh. St. 349; *Hathaway* v. *Mutual Life Insurance Co.*, 99 Fed. Rep. 534; *Burridge* v. *New York Life Insurance Co.*, 211 Missouri, 158; Black's Constitutional Law, 3d ed., § 296; Lewis' Sutherland Statutory Construction, 2d ed., § 642.

The plan of workmen's compensation, as operated by the State Industrial Commission under the law of Ohio, is not insurance.

*Mr. Timothy S. Hogan* and *Mr. B. W. Gearheart*, with whom *Mr. John G. Price*, Attorney General of the State of Ohio, was on the briefs, for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This suit was brought by the plaintiff in error, Thornton, against defendants in error, hereinafter called defendants,

composing the Industrial Commission of Ohio. The Cleveland Stamping and Tool Company filed an answer and cross petition. From a judgment sustaining demurrers to the petition of Thornton, and to the answer and cross petition of the Cleveland Stamping and Tool Company, there was an appeal to the Court of Appeals and thence by proceeding in error to the Supreme Court of the State, by which court the judgment was affirmed. This writ of error is prosecuted by Thornton and the Cleveland Company.

Thornton's petition and the pleadings of the Cleveland Company are substantially the same. We use for convenience, Thornton's petition and state its allegations narratively as follows: He is a manufacturer at Cleveland, Ohio, employing more than forty men. The Industrial Commission determined, as required by the Act of the General Assembly of the State, passed February 26, 1913, and comprised in §§ 1465–41 A to 1465–106, General Code of Ohio, that he was of sufficient financial ability to render certain the payment of compensation to injured employees, the benefits provided by that act. He, on the — day of January, 1914, elected to accept the act and proceed under it, has since complied with its provisions, has abided by the rules of the Commission and all that is required of him by the act.

January, 1914, he made a written contract with the Ætna Life Insurance Company of Hartford, Connecticut, a duly licensed company, wherein that company agreed to pay to his injured employees the compensations required by the act of the assembly for injuries or upon death, and agreed to indemnify him against the liabilities and requirements of the act.

December 1, 1917, the Commission adopted a resolution which recited the Act of the Assembly of the State of February 16, 1917, amending § 1465–101, General Code of Ohio, and an Act of the General Assembly passed

March 20, 1917, amending § 1465–69, General Code of the State, and an Act passed March 21, 1917, and resolved and declared that no employers should be permitted to pay or furnish directly to injured employees, or the dependents of killed employees, the compensation and benefits provided for in §§ 1465–41 A to 1465–106, General Code of Ohio, if such employers by contract or otherwise, shall provide for the insurance of the payment by them of such compensation and benefits, or shall indemnify themselves against loss sustained by the direct payment thereof. The Commission revoked its previous findings and authorizations, the revocation to stand as of January 10, 1918, and directed notices of the revocation and the resolution of the Commission to be given to all employers, including Thornton, and these notices will be sent unless restrained.

The resolution of the Commission, the revocation of its previous action, and the notices which it threatens to send, are based upon the sole ground that it is its duty so to do under the laws of the State indicated above.

The contract of Thornton with the Ætna Company is a valid, subsisting contract and he has a right to continue it until it be cancelled, and that the sending of the notices as above stated, and the revocation of the findings of fact that the Commission had made and its refusal to certify to Thornton its findings of fact, as provided for in § 1465–69, will cause him irreparable injury and damage, for which he has no adequate remedy at law. Further, that there are more than 675 employers situated as Thornton is and that, therefore, the questions involved are of common and general interest, and as it is impractical to bring them all into court, he sues for the benefit of all.

The laws invoked by the Commission do not justify its action, and if it be determined that they do, then they, and the acts of the Commission under them, are in contravention of the Fourteenth Amendment of the Constitution

of the United States, and of Article I, § 10 of that Constitution, and also of the constitution of the State of Ohio.

An injunction, temporary and permanent, against the action of the Commission was prayed, and a temporary restraining order granted, but it was subsequently dissolved, and as we have said, a demurrer was sustained to the petition and judgment entered dismissing the suit. It, as we have also said, was affirmed by the Supreme Court of the State.

The various acts of legislation of the State were sustained by the courts of the State and hence their validity under the constitution of the State is removed from the controversy, and our inquiry is confined to the effect upon them of the Constitution of the United States.

In support of the contention that the Constitution of the United States makes the legislation and the action under it illegal, it is said that insurance against loss is the right of everybody, and specifically it is the right of employers to indemnify themselves against their liability to employees, and that the right is so fixed and inherent as to be an attribute of liberty removed from the interference of the State.

The provisions of the legislation are necessary elements in the consideration of the contention. (1) The constitution of Ohio authorizes Workmen's Compensation Laws. Explicitly it provides for the passage of laws establishing a State Fund to be created by compulsory contributions thereto by employers, the fund to be administered by the State. The constitutionality of a law passed under that authorization was sustained by this court in *Jeffrey Manufacturing Co.* v. *Blagg*, 235 U. S. 571, against the charge that its classifications were arbitrary and unreasonable. And Workmen's Compensation Laws of other States have been declared inoffensive to the Fourteenth Amendment of the Constitution of the United States. *New York Central R. R. Co.* v. *White*, 243 U. S. 188; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. (2)

The law that was passed provided that every employer (there were exceptions not necessary to mention) in the month of January, 1914, and semi-annually thereafter, should pay into the State Insurance Fund the amount of premium determined and fixed by the State Liability Board of Awards for the particular employment or occupation of the employer. It was, however, also provided (we quote from the opinion of the Supreme Court) "that certain employers under certain conditions might elect to pay individually, or from a benefit fund, department or association, compensation to workmen and their dependents for death or injuries received in the course of employment." This was an alternative granted, and its conditions were fulfilled, it was contended, and that upon the faith of the fulfillment of it and in indemnity against contingencies, plaintiff entered into a contract of insurance with the Ætna Company. It was further contended that the alternative and the insurance against its requirements became property, and inviolable; became contracts with immunity from impairment. To the contention the Supreme Court replied that the alternative to contribution to the State Fund of dealing with the employees directly was a privilege that need not have been granted and that, therefore, to effect the purpose of the constitution and law, could be withdrawn, that the right to withdraw the privilege depended not merely upon the police power of the State "but rather directly upon the constitutional grant of power"; and that, besides, the right was reserved in that provision of § 22 of the original act which gave to the Commission power to "'at any time change or modify its findings of fact . . . if in its judgment such action is necessary or desirable to secure or assure a strict compliance with all of the provisions of the law. . . . '"

And it was said that the experience of four years demonstrated the necessity or desirability of a change and that, therefore, it was made.

The meaning thus ascribed to § 22 we must accept. It expressed a continuing condition upon the concession to employers to deal directly with their employees, and the Industrial Commission by the power reserved could terminate the concession at any time.

There was besides, subsequent and empowering legislation in the amendment of March 20, 1917, as the Supreme Court pointed out. That act specifically limits the privilege of electing between directly dealing with employees and contribution to the State Fund to those employers "who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof." The court hence decided that it became the duty of the Commission to change or modify its findings. And it was also decided that the act was not only clearly within the power of the State, but was "in furtherance of the purpose and intent of the constitution and the law, to create and maintain one insurance fund, to be administered by the state."

We repeat, we must accept the decision of the court as the declaration of the legislation and the requirement of the constitution of the State, as much a part of both as if expressed in them (*Douglass* v. *County of Pike*, 101 U. S. 677), and we are unable to yield to the contention that the legislation or the requirement transcends the power of the State, or in any way violates the Constitution of the United States. The law expressed the constitutional and legislative policy of the State to be that the compensation to workmen for injuries received in their employment was a matter of public concern, and should not be left to the individual employer or employee, or be dependent upon or influenced by the hazards of controversy or litigation, or inequality of conditions. There was an attempt at the accommodation of the new policy to old conditions in the concession to employers to deal directly with their employees, but there was precaution against failure in the

provision of § 22 giving discretion to the Commission to withdraw the concession. After a few years' experience, that discretion was turned into a duty and by the amendment of March 20, 1917, the concession was taken away from those employers who indemnified themselves by insurance. This was considered necessary to execute the policy of the State, and we are unable to yield to the contention that property rights or contract rights had accrued against it. To assert that the first steps of a policy make it immutable, is to assert that imperfections and errors in legislation become constitutional rights. This is a narrow conception of sovereignty. It is, however, not new and we have heretofore been invoked to pronounce judgment upon it. Complying, we said, that an exercise of public policy cannot be resisted because of conduct or contracts done or made upon the faith of former exercises of it upon the ground that its later exercises deprive of property or invalidate those contracts. *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467.

We are not disposed to extend the discussion. Indeed, we think the case is in narrow compass. We are not called upon to controvert the right to insure against contingent losses or liabilities, or to minimize the value of insurance to business activities and enterprises, or discuss the general power or want of power of the State over it. We are only called upon to consider its relation to and possible effect upon the policy of a workmen's compensation law and we can readily see that it may be, as it is said the experience of Ohio demonstrated, inimical to that policy to permit the erection of an interest or a power that may be exerted against it or its subsidiary provisions. This was the view of the Supreme Court of the State, and by it the court justified the power conferred upon and exercised by the Commission. See *Mountain Timber Co.* v. *Washington, supra.*

*Judgment affirmed.*

THE CHIEF JUSTICE, concurring.

To compel an·employer to insure his employee against loss from injury sustained in the course of the employment without reference to the negligence of the employee and at the same time to prohibit the employer from insuring himself against·the burden thus imposed, it seems to me, if originally considered, would be a typical illustration of the taking of property without due process and a violation of the equal protection of the law.

But in view of the decision in *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, sustaining the constitutionality of a law of the State of Washington which necessarily excluded the possibility of the insurance by the employer of the burden in favor of his employees, which the statute in that case imposed, I do not think I am at liberty to consider the subject as an original question, but am constrained to accept and apply the ruling in that case made, and for that reason·I concur in the judgment now announced.

MR. JUSTICE McREYNOLDS dissents.