## VAN WERT GASLIGHT CO. v. PUBLIC UTILITIES COMMISSION OF OHIO et al.

(District Court, S. D. Ohio, E. D.   March 3, 1924.)

No. 274.

1. **Constitutional law ⬥⟹298(1)—Rates not sufficient to yield reasonable return are violative of due process clause.**

   Rates which do not yield a reasonable return on the value of the property used at the time it is being used to render the service are unjust, unreasonable, and confiscatory, and their enforcement deprives the public utility company of its property, in violation of Const. Amend. 14.

2. **Public service commissions ⬥⟹11—Valuation·determined de novo in each controversy.**

   While previous valuations may be considered for what they are worth in the making of a new valuation, the commission, in fixing a rate, must determine de novo the valuation of a company's property in each controversy.

3. **Constitutional law ⬥⟹298(1)—Rate-fixing system must provide for judicial review of actions of administrative boards.**

   A system of fixing rates of public utility companies in conformity with the due process clause of the federal Constitution must provide a means for the judicial review of the actions of the administrative boards.

4. **Public service commissions ⬥⟹27—Acts of Public Utilities Commission held subject to judicial review by state Supreme Court.**

   Under Const. Ohio, art. 4, § 2, and Gen. Code Ohio, §§ 499—16, 544, the acts of the Public Utilities Commission of Ohio are subject to judicial review by the Supreme Court of that state.

5. **Judgment ⬥⟹548—State Supreme Court's judicial review of Utilities Commission's determination as to rate precludes re-examination of question in another tribunal.**

   Judicial review by Ohio Supreme Court of determination of Public Utilities Commission as to rate, and affirmance of Commission's finding as to reasonable rate, as against contention that rate was violative of due process clause, would preclude the re-examination of the question in any other tribunal, in absence of federal question reviewable by error proceeding in United States Supreme Court.

6. **Judgment ⬥⟹563(1)—No estoppel by judgment, where review is "not full judicial review" contemplated by constitutional guaranties.**

   No estoppel by judgment arises, where review afforded does not, in fact, constitute that "full judicial review" contemplated by constitutional guaranties.

7. **Courts ⬥⟹366(1)—Rule as to conclusiveness of decision of state court of last resort, construing state statutes and Constitution, stated.**

   While the decision of the court of last resort of a state, construing its statutes and Constitution, and declaring the capacity in which it acts under such Constitution and statutes, is of great persuasive force, the question of the conclusiveness of the decision depends, not on the character of the body, but on the character of the proceedings.

8. **Public service commissions ⬥⟹21—Appeal to state Supreme Court not necessary before commencement of action in federal court to enjoin order as confiscatory.**

   Appeal to Supreme Court of Ohio from determination of Public Utilities Commission fixing rate is not necessary, before commencement of action in federal court to enjoin enforcement of commission's order, on the ground that the rate is confiscatory, and therefore violative of due process clause.

---

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **Injunction** ⊜136(1)—**Interlocutory.injunction granted pending final determination, where there is reasonable ground to believe that complainant may be entitled to relief on final hearing.**

In action to enjoin enforcement of order of Public Utilities Commission, on ground that rate fixed is confiscatory, and therefore violative of Const. Amend. 14, in which there is reasonable ground to believe that complainant may be entitled to relief on final hearing, the complainant is entitled to an interlocutory injunction pending such final determination of the case.

In Equity. Suit by the Van Wert Gaslight Company against the Public Utilities Commission of Ohio and others. Interlocutory injunction granted.

Freeman T. Eagleson, of Columbus, Ohio, and Frank Irvine, of Ithaca, N. Y., for complainant.

Beecher W. Waltermire, of Columbus, Ohio, Jesse F. Beam, of Van Wert, Ohio, for city of Van Wert.

C. C. Crabbe, Atty. Gen., and John W. Bricker, Special Asst. Atty. Gen., for Public Utilities Commission.

Before DONAHUE, Circuit Judge, and SATER and HICKENLOOPER, District Judges.

PER CURIAM. This is an action to enjoin the enforcement of an order of the Public Utilities Commission of Ohio, entered on November 2, 1923, fixing the price of artificial gas supplied by the complainant in the city of Van Wert for the period from September 1, 1921, to September 1, 1923, at $2.13 per thousand cubic feet, and ordering a repayment to consumers of the difference between this price and the amount actually charged during such period, viz. $2.50 per thousand. The claim is, of course, made that the rate fixed, $2.13, is confiscatory, and therefore in violation of the Fourteenth Amendment to the Constitution of the United States. A temporary restraining order was issued, and the matter of granting an interlocutory injunction was thereafter submitted to the undersigned three judges, in compliance with section 266 of the Judicial Code of the United States, as amended (Comp. St. § 1243).

The facts may be briefly stated. The question of the rate to be charged for the period from 1919 to 1921 being before the Public Utilities Commission, proceedings were started for the valuation of the complainant's property, used and useful in its business, as of August 21, 1918, the commission using average costs of material and labor for the then preceding five years in making said valuation. A tentative valuation was reported at approximately $124,000, which it is now contended was much lower than the true valuation. About the time of arriving at this tentative valuation, however, the municipality and the company came to an agreement as to the price to be charged for gas, namely, $2.50 per thousand cubic feet, for the period from September 1, 1919, to September 1, 1921, and no steps were thereafter taken by the company to procure a modification or increase in the valuation thus tenta-

tively announced. Such valuation, therefore, was treated by the Public Utilities Commission as a final valuation as of August 1, 1918.

In July or August, 1921, the council of the city of Van Wert passed an ordinance fixing the price of gas for the period from September 1, 1921, to September 1, 1923, at $1.65 per thousand cubic feet. The complainant thereupon took an appeal to the Public Utilities Commission, and the matter was set for hearing. Upon the hearing of this appeal, the Public Utilities Commission received in evidence the tentative valuation as of August 1, 1918, holding that "there was no evidence before the commission showing such material change in the physical property of said company as to necessitate a revaluation." The company was also permitted to offer in evidence detailed valuations of all its property, used and useful in its business, as of then even date, one based upon reproduction cost less depreciation, as of August, 1921, totaling $446,-000, and another based on reproduction cost, computed on the average cost of labor and material for the then preceding five years, less depreciation, totaling $457,000. The lowest valuation offered by complainant's experts was approximately $426,000. It is alleged, and earnestly contended, that, although received in evidence, these valuations upon the part of the company were given no consideration whatever by the commission, but that the commission took the valuation as of August 21, 1918, as an inflexible basis for the calculation of valuation as of 1921, adding thereto capital expenditures and deducting depreciation, and thus giving no effect whatever to any part of the evidence introduced by complainant.

As preparatory to fixing the rate, the commission made a separate finding of valuation of complainant's property for rate-fixing purposes at $124,476.10. Proceedings in error were thereupon prosecuted by the complainant to the Supreme Court of Ohio, and this valuation, for rate-fixing purposes, was affirmed by the Supreme Court. After such affirmance the commission held a hearing for the purpose of fixing the rate based thereon, and on November 2, 1923, this rate was definitely fixed at $2.13 per thousand cubic feet. No appeal has been taken to the Supreme Court of Ohio upon this order, but the complainant has filed its bill herein, praying that the enforcement of such order be enjoined. This rate, upon estimated business, would afford a return of 8 per cent. upon a valuation of approximately $125,000, but of only $2\frac{1}{3}$ per cent. upon the lowest valuation submitted by the company.

Other questions were involved in the action, such as the right of the company to create a retirement reserve, in addition to a maintenance reserve; but it will be unnecessary to determine these points. The court will first dispose of the jurisdiction of this court to consider the question of valuation, or, differently expressed, to determine whether the complainant has been deprived of its property without due process of law by the use of a valuation for rate-fixing purposes which is less than the true value of the property. If the court is foreclosed as to such inquiry, it would not seem that a rate which would yield a return of 8 per cent. upon the valuation, so authoritatively fixed, would amount to confiscation, or the deprivation of plaintiff's property without due process of law.

[1] Without detailed reference to the many cases sustaining the proposition, we feel that the language of the Supreme Court in the case of Bluefield Co. v. Public Service Commission, 262 U. S. 679, 690, 43 Sup. Ct. 675, 678 (67 L. Ed. 1176) is an authoritative statement of the law:

·Rates which are not sufficient to yield a reasonable return on the value of the property used at the time it is being used to render the service are unjust, unreasonable, and confiscatory, and their enforcement deprives the public utility company of its property in violation of the Fourteenth Amendment. This is so well settled by numerous decisions of this court that citation of the cases is scarcely necessary."

Perhaps the entire present attitude of the Supreme Court upon this question may be .found in the case just above cited and in the cases of Georgia Railway & Power Co. v. Railroad Commission, 262 U. S. 625, 43 Sup. Ct. 680, 67 L. ·Ed. 1144, and Southwestern Telephone Co. v. Public Service Commission, 262 U. S. 276, 43 Sup. Ct. 544, 67 L. Ed. 981. In all of these cases the court treats the question of valuation as the pivotal question in the determination of rates, for it is upon such valuation that the company is held to be entitled to a fair return. In each of the above cases the court also quotes with approval from the case of Willcox v. Consolidated Gas Co., 212 U. S. 19, 52, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134, to the effect that:

"The value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property, which legally enters into the consideration of the question of rates, has increased in value since it was acquired, the company is entitled to the benefit of such increase."

And in determining the value as of the time when the inquiry is made regarding rates, it would seem that the reproduction value at such time is the dominant element, although not the only element for consideration. See, also, Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Commission, 292 Fed. 139 (District Court, Eastern District of Michigan, July 3, 1923, before Denison, Circuit Judge, and Tuttle and Simons, District Judges). These cases also demonstrate the principle that the Utilities Commission which fails to take into consideration, in fixing rates, the then value of the property of the company, or to give effect to increased costs of material and labor, but acts arbitrarily and without performance of the duty of valuation imposed upon it by statute, to that extent falls into error, and if by these means the rate fixed will not yield a reasonable income upon the *true* value of the property then used and useful, the property of the company is taken in violation of the Fourteenth Amendment.

[2] From the above it would seem conclusively to follow that, while previous valuations may be considered for what they are worth in the making of a new valuation, the duty is imposed upon the commission of determining de novo the valuation of the company's property in each rate controversy. The complainant was entitled to an exercise of the functions and a performance of the duty imposed upon the commission as to all matters touching its appeal from the ordinance effective Sep-

tember 1, 1921. Wichita R. R. v. Public Utilities Commission, 260 U. S. 48, 59, 43 Sup. Ct. 51, 67 L. Ed. 124. We do not, therefore, approve as in compliance with. law any custom prevailing in a commission to take previous valuations as a determinative and inflexible basis for subsequent ones without bona fide inquiry into the correctness of. the previous valuation and without giving consideration. to all pertinent evidence introduced.

[3] It would seem now to be established beyond any question that, to provide a system of fixing rates of public utility companies in conformity with the "due process" clause of the federal Constitution, it is also necessary to afford or provide a means for the judicial review of the actions of such administrative boards. Article 4, § 2, of the Constitution of Ohio, provides for full judicial review of the proceedings and final orders of the Public Utilities Commission. And section 544 of the General Code of Ohio provides that:

"A final order made by the commission shall be reversed, vacated or modified by the Supreme Court, on a petition in error, if upon consideration of the record such court is of the opinion that such order was unlawful and unreasonable."

Section 499—16 of the General Code of Ohio also provides that all findings of fact made by the commission—

"shall be subject to review by the Supreme Court of this state in the same manner and within the same time as other orders and decisions of the commission."

[4] There can probably be little question that the constitutional provision above quoted and the statutes enacted under it confer upon the Supreme Court judicial power to review all acts of the commission. The power conferred by the language of the statute and the Constitution is a judicial power, and not a legislative power, as in Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150. In Hocking Valley Railway Co. v. Public Utilities Commission, 100 Ohio St. 321, 126 N. E. 397, the Supreme Court of Ohio expressly so held:

"Because, if by legislative act or administrative order property or rights are taken or affected, parties must be given full opportunity to show by judicial review that the taking or interference with rights or property was so arbitrary, unjust, or unreasonable as to amount to a deprivation in violation of the Constitution."

And yet, without expressly overruling this case, the Supreme Court of Ohio, in the so-called error proceedings (U. S. v. Ritchie, 58 U. S. [17 How.] 525, 533, 15 L. Ed. 236) from the order of the Utilities Commission fixing the valuation of the Van Wert Gaslight Company's property, apparently held that in such proceedings the plaintiff is not entitled to a full judicial inquiry into the facts, and the independent judgment of the court upon the facts as well as the law. In the report of that decision (Van Wert Gaslight Co. v. Public Utilities Commission, 106 Ohio St.170, 176, 140 N. E. 137, 138, 139) the court says:

"The commission, however, having admitted all the evidence offered by the plaintiff in error, and having by its journal entry expressly declared, 'after considering the inventory of its property filed herein by said company, the evidence and exhibits, and having completed an inventory and valuation of said property, and being fully advised in the premises,' this court cannot say, as a matter of law, that it was the duty of the commission to have found that its own inventory of August 21, 1918, was entitled to less probative force than the inventories of the plaintiff in error, or the converse thereof."

This would seem to be a direct denial to the plaintiff utility of that kind of an inquiry to which it was held to be entitled in Bluefield Co. v. Public Service Commission, 262 U. S. 679, 689, 43 Sup. Ct. 675, 67 L. Ed. 1176, following Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 289, 40 Sup. Ct. 527, 64 L. Ed. 908, and cases there cited. In this latter case, the judgment of the Supreme Court of Pennsylvania was reversed by the Supreme Court of the United States upon the ground that the judgment of the former interpreted the state statute as withholding from the courts the power to determine the question of confiscation, according to their own independent judgment, when the action of the commission came to be considered on appeal. This, it was held, was not such judicial review as constituted due process of law. So here we are of the opinion that the so-called error proceedings upon the question of valuation, in the Supreme Court of Ohio, did not constitute such a judicial inquiry as was contemplated by the "due process" clause of the federal Constitution, and, had a federal question then existed, the remedy would have been by writ of error issuing from the Supreme Court of the United States to the Supreme Court of Ohio, as in Ohio Valley Water Co. v. Ben Avon Borough, supra, Bluefield Co. v. Public Service Commission, supra, Southwestern Telephone Co. v. Public Service Commission, supra, and numerous other cases.

[5] At the time of these error proceedings, however, there had been no confiscatory act, because the rate had not yet been fixed, and, non constat, the commission would still fix a rate which would afford a reasonable return upon the larger value of plaintiff's property, and no federal question had theretofore arisen which would permit the issuance of a writ of error from the Supreme Court of the United States to the Supreme Court of Ohio. The question is therefore presented whether, even assuming the absence of the right to prosecute error, the complainant is nevertheless estopped by the judgment of the Supreme Court of Ohio to again litigate the question of valuation in another court, either directly or as a part of a broader cause of action involving it. Had this matter of valuation been the subject of *judicial review* in the Supreme Court of Ohio, and such finding of the Public Utilities Commission upon this question been affirmed, an estoppel by judgment would arise, which would preclude the re-examination of this question in any other tribunal, as between these same parties. Such judicial examination of the question would operate as an estoppel as to every issue and point controverted, upon the determination of which the judgment of the court was rendered. Cromwell v. Sac Company, 94 U. S. 351, 24 L. Ed. 195; Myers v. International Company, 263 U. S. 64, 71, 44 Sup. Ct. 86, 68 L. Ed. —— (preliminary print No. 1).

[6] Inasmuch as no federal question did then exist, and since we are of the opinion that there was no such a judicial review as is contemplated under the cases cited, we are constrained to the opinion that no estoppel arose by reason of the judgment of the Supreme Court of Ohio, and that the complainant is entitled, in the present action, to a full inquiry into the fact of confiscation, including the question of the true valuation of its property. To hold otherwise would be to deprive the complainant of its day in court upon the question of confiscation because it did not prosecute error to the judgment of the Supreme Court of Ohio upon the much more doubtful ground that, even in the absence of demonstrated confiscation, the statutes of Ohio, as construed by the Ohio Supreme Court, contravened the "due process" clause of the Constitution, a point not raised in the state courts. ·

[7] While the decision of the court of last resort of a state, construing its statutes and Constitution, and declaring the capacity in which it acts under such Constitution and statutes, is of great persuasive force. (Douglas v. Noble, 261 U. S. 165, 168, 43 Sup. Ct. 303, 67 L. Ed. 590; Thornton v. Duffy, 254 U. S. 361, 41 Sup. Ct. 137, 65 L. Ed. 304; Irrigation District v. Bradley, 164 U. S. 112, 154, 17 Sup. Ct. 56, 41 L. Ed. 369; Ahlberg v. United States, 271 Fed. 661, 663 [C. C. A. 6] ; McGregor v. Hogan, 263 U. S. 234, 44 Sup. Ct. 50, 68 L. Ed. —— decided November 12, 1923), yet as was said in Prentis v. Atlantic Coast Line, 211 U. S. 226, 29 Sup. Ct. 67, 53 L. Ed. 150:

"That question depends, not upon the character of the body, but upon the character of the proceedings."

The complainant in this case has never had a full judicial inquiry into the question of valuation, and cannot now be estopped from claiming the benefit of the true valuation of its properties in the decision of the issue of confiscation.

[8] It is clear that the justiciable stage of the case upon the question of confiscation is not reached until the Public Utilities Commission completes its investigation and fixes the rate claimed to be confiscatory. It is clear, therefore, that upon the fixing of the rate claimed to be confiscatory, on November 2, 1923, the justiciable stage was reached. The function granted to the Supreme Court of Ohio, although not exercised, being judicial, and not legislative, as in Prentis v. Atlantic Coast Line Co., supra, and Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 Sup. Ct. 353, 67 L. Ed. 659, the statutory appeal is unnecessary before seeking relief here.

[9] The question of valuation not being foreclosed, and there being such great divergence between the valuation fixed by the Public Utilities Commission and the valuation of the complainant's experts, and taking into consideration the fact that the commission's valuation was arrived at by using an admittedly tentative valuation, not controverted nor contested when made, and such tentative valuation was apparently given controlling force and effect, to the exclusion of all evidence offered by the complainant, there is reasonable ground for believing that the complainant may be entitled to relief upon final hearing. The complainant is therefore entitled to an interlocutory injunction pending such final determination of the case.

Certain questions were raised upon oral argument pertaining to another ordinance of the city of Van Wert, effective September 1, 1923, upon which an appeal is now pending before the Utilities Commission. Until the decision by the Utilities Commission of this appeal, the justiciable stage will not have been reached as to this latter ordinance, in the absence of circumstances similar to those in Oklahoma Natural Gas Co. v. Russell, supra. Suffice it to say that, if the complainant is denied relief by the commission upon such appeal, either upon the question of valuation, of rates, of the diminution of price in the event the gas falls below the prescribed standard of quality, of operating expenses, or reserve to be permitted, or upon any other feature which is manifestly confiscatory, the complainant can then make a selection of its forum and bring the case here, or to the Supreme Court, for review. These questions are not raised upon the present record, and are not decided.

The interlocutory injunction is granted.