In the Matter of JOSEPH SHELOFSKY et al., Plaintiffs, *v.* ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, Defendants.

Third Department, June 1, 1972.

*DeGraff, Foy, Conway & Holt-Harris (James D. Featherstonhaugh* of counsel), for plaintiffs.

*Louis J. Lefkowitz, Attorney-General (John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for defendants.

*Arthur J. Harvey* for Police Conference of New York, Inc., *amicus curiae.*

*Per Curiam.* This is a submission of a controversy upon an agreed statement of facts pursuant to CPLR 3222.

The individual plaintiffs are employees of the State of New York and members (two of them also being officers) of the plaintiff, Civil Service Employees Association, Inc., a certified representative of public employees. Plaintiffs bring this action to test the constitutionality of chapters 503 and 504 of the Laws of 1971 which amended subdivision 7 of section 201 of the Civil Service Law[1] and added section 214 of the Civil Service Law.[2] Those amendments provide that certain managerial and confidential public employees, as designated by the public employer upon application to the Public Employment Relations Board (PERB), should not hold office in or be a member of any employee organization in which employees of the same employer are members.

Acting pursuant to the amendments, the Director of the New York State Office of Employee Relations submitted a petition to PERB requesting that approximately 7,600 named employees of the 150,000 covered employees be designated "managerial" or "confidential". PERB has notified the employees and their agencies of the filing and that it will proceed to determine whether or not the plaintiffs and all others named in the Director's application are properly classified as managerial or

1. Subdivision 7 of section 201 reads as follows: "The term 'public employee' means any person holding a position by appointment or employment in the service of a public employer, except that such term shall not include * * * persons who may reasonably be designated from time to time as managerial or confidential upon application of the public employer to the appropriate board in accordance with procedures established pursuant to section two hundred five or two hundred twelve of this article, which procedures shall provide that any such designations made during a period of unchallenged representation * * * shall only become effective upon the termination of such period of unchallenged representation. Employees may be designated as managerial only if they are persons (a) who formulate policy or (b) who may reasonably be required on behalf of the public employer to assist directly in the preparation for and conduct of collective negotiations or to have a major role in the administration of agreements or in personnel administration provided that such role is not of a routine or clerical nature and requires the exercise of independent judgment. Employees may be designated as confidential only if they are persons who assist and act in a confidential capacity to managerial employees described in clause (b)."

2. "No managerial or confidential employee * * * shall hold office in or be a member of any employee organization which is or seeks to become * * * the certified or recognized representative of the public employees employed by the public employer of such managerial or confidential employee."

confidential. The parties have stipulated that by reason of their membership in CSEA the individual plaintiffs now receive important group insurance benefits, benefits of the CSEA's legal assistance program and the representational benefits of membership in CSEA. These will be foreclosed to them by the prohibition of section 214 of the Civil Service Law if they are designated as management or confidential employees.

We are asked to consider whether the amendments fail because they are unconstitutionally vague, and if not, whether the statute, as amended, is a valid exercise of the State's police power.

Subdivision 7 of section 201 does not fail for vagueness. The plaintiffs claim that the " public employer " in the section means the State and the statute is ambiguous because it does not identify who is to act for the State. It is unrealistic to expect that it would name the responsible individual for every imaginable case. The " public employer " is sufficiently defined in subdivision 6 of section 201 of the Civil Service Law in terms of the various political subdivisions and authorities, commissions, agencies or departments, each of which can be readily identified in any given case and which were identified in this case with respect to the employers of the individual plaintiffs without any dispute. Under the statutory plan, the public employer then designates the subject employees to PERB, which acting under its omnibus grant of authority in paragraph (j) of subdivision 5 of section 205, may approve or disapprove the designations, an administrative decision-making process calling for the exercise of discretion and expertise.[3] This is a permissible delegation of authority limited by the direction that it be " reasonably " exercised within the standards set by the Legislature.

The statute provides that the employees designated must " (a) formulate policy " or " (b) assist directly in the preparation for and conduct of collective negotiations " or " have a major role in the administration of agreements or in personnel administration provided that such role is not of a routine or clerical nature and requires exercise of independent judgment ". Significantly, similar criteria appear in the definition of " supervisor " in the National Labor Relations Act (U. S. Code, tit. 29, § 152, subd. [11]). The standards are both familiar and sufficient under established administrative law.

The plaintiffs contend that the amendments violate their rights of due process, freedom of association, and equal pro-

3. The plaintiffs and the *amicus* brief argue that the procedure lacks the due process requirements of notice and hearing but we note that PERB is given adequate procedural powers under section 205 of the Civil Service Law, and we do not presume it will operate unconstitutionally.

tection under the United States Constitution. As the court stated in *Matter of Bauch* v. *City of New York* (21 N Y 2d 599, 606–607) : '' The requirements of due process are satisfied as long as the challenged measure is reasonably related to the attainment of a permissible objective. (See, e.g., *Railway Employes' Dept.* v. *Hanson*, 351 U. S. 225, 233–235; *Virginian Ry.* v. *Federation*, 300 U. S. 515, 558–559.) Similarly, the standards of equal protection are met if a classification, or a distinction among classes, has some reasonable basis. (See, e.g., *Baxstrom* v. *Herold*, 383 U. S. 107, 111; *Morey* v. *Doud*, 354 U. S. 457, 464–465; *Bucho Holding Co.* v. *State Rent Comm.*, 11 N Y 2d 469, 477.) '' (See, also, *Matter of Kraemer* v. *Helsby*, 35 A D 2d 297, app. dsmd. 28 N Y 2d 717; *Rogoff* v. *Anderson*, 34 A D 2d 154, affd. 28 N Y 2d 880.)

There is nothing very novel about the concept of employment units consisting of management employees as distinct from other employees. The State should have a loyal management cadre of employees handling its labor relations. This practice has been accepted in private industry and also in the public sector for State employees (*Matter of State of New York* [*N. Y. State Employees Council 50*], 1 PERB, par. 399.85) and for New York City employees through the city's office of collective bargaining. (Communications Workers of America, Dec. No. 6–70.) The statute in this case provides reasonable means for limiting the number of employees designated by the employer.

It is common knowledge that the interests of employees and management are frequently adverse. The government may rightfully require that those charged with the responsibility of implementing and administering collective bargaining agreements be free from any possible conflict of interest either because they are the beneficiaries of the agreements they are implementing or because they are unsympathetic to management's interests due to associational bias. The State's police power may properly be exercised to this end for the purpose of achieving stability in labor relations, even though the result is to interfere with some employees' personal rights to due process and freedom of association. Furthermore, the classification here involved is reasonable and avoids equal protection criticisms.

Plaintiffs also claim that the amendments unconstitutionally impair their contractual rights. (U. S. Const., art. I, § 10.) The contract between CSEA and the State expired by its terms March 31, 1972. Any new contract would necessarily have to comply with the existing law. As to the contracts of insurance, these benefits of individual members are contingent upon continued CSEA membership and will terminate if their member-

ship terminates.[4]   Since the State may legitimately classify these employees as management or confidential, a designation requiring them to resign from CSEA, the State may amend or change its laws to that purpose even though the amendment may affect contractual rights of CSEA and its members because those rights are subject to these very laws.   (*Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398; *Thornton* v. *Duffy,* 254 U. S. 361, 369.)

We have considered the other arguments advanced by plaintiffs and find them without merit.

The judgment should be directed to be entered, without costs, in favor of defendants declaring that chapters 503 and 504 of the Laws of 1971 are constitutional.

HERLIHY, P. J., STALEY, JR., GREENBLOTT, SWEENEY and SIMONS, JJ., concur.

Judgment directed to be entered, without costs, in favor of defendants declaring that chapters 503 and 504 of the Laws of 1971 are constitutional.

---

4. The statute provided for preservation of the employees' contract rights by postponing the redesignation of affected employees until after the contract with CSEA expired in 1972.