J. FRED MUELLER & others *vs.* COMMISSIONER OF PUBLIC HEALTH & another.

Suffolk.    May 6, 7, 1940. — November 13, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Equity Jurisdiction,* To enjoin enforcement of unconstitutional statute. *Constitutional Law,* Interstate commerce. *Interstate Commerce.. Jurisdiction,* By consent or waiver. *Waiver. Furniture. Bedding.*

Waiver by a defendant of lack of jurisdiction of the court over the cause cannot confer jurisdiction; and the court must consider the question of jurisdiction of its own motion.

In the absence of an adequate remedy at law, one who would suffer property loss by the enforcement of an unconstitutional statute is entitled to have its enforcement by a public officer enjoined in equity.

G. L. (Ter. Ed.) c. 94, § 270D, inserted by St. 1939, c. 351, lays an unreasonable and discriminatory burden on interstate commerce and is void as in conflict with the commerce clause in art. 1, § 8, of the Federal Constitution.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 26, 1940.

The case was reserved for the full court by *Ronan,* J.

*C. E. Wyzanski, Jr.,* (*S. F. Dunn* of Michigan with him,) for the plaintiffs.

*E. O. Proctor,* Assistant Attorney General, for the defendants.

Cox, J. This is a bill in equity brought by a Michigan copartnership having no usual place of business in this

Commonwealth and no partner who resides here, against the commissioner of public health and the Attorney General to enjoin the enforcement of the provisions of G. L. (Ter. Ed.) c. 94, § 270D, inserted by St. 1939, c. 351, entitled "An Act further regulating the sale within the commonwealth of articles of bedding and of upholstered furniture."[1] The suit was reserved by the single justice upon the bill, answer, and agreed facts for the consideration and determination of the full court. G. L. (Ter. Ed.) c. 214, § 31. The constitutionality of the statute is challenged.

From the agreed facts it appears that the copartnership manufactures upholstered furniture in its factory in Michigan and that for more than forty-eight years it has sold such furniture to retail furniture dealers located in this Commonwealth, although no contracts for such sales are at any time entered into here. The copartnership is in active competition with manufacturers of similar furniture located here and elsewhere, and any interruption of its customary dealings with local retailers would result in serious and lasting damage to its business. During the forty-eight years that it has done business here, the copartnership and its predecessors have built up an important "clientele" and

---

[1] "No person shall sell, or advertise, offer or expose for sale, or have in his custody or possession with intent so to do, any article of bedding or upholstered furniture manufactured without the commonwealth by a manufacturer, or sold within the commonwealth by a wholesaler, residing without the commonwealth and having no usual place of business within the commonwealth, unless there is placed upon the tag, in any case where a tag is required by section two hundred and seventy or by section two hundred and seventy C, the name of such manufacturer or wholesaler and the serial number of the permit granted to him by the department of public health. Any person residing without the commonwealth and having no usual place of business within the commonwealth who manufactures or sells at wholesale articles of bedding or upholstered furniture which may be sold within the commonwealth may obtain from said department a permit to sell such articles within the commonwealth, which permits said department is hereby authorized to grant and to renew annually. Every such permit shall bear a serial number, and each article of bedding or upholstered furniture sold within the commonwealth by any such manufacturer or wholesaler shall bear the proper permit number and shall also be labelled with the date of delivery within the commonwealth. The fee for every such permit and for each annual renewal thereof shall be fifty dollars. Said department, after notice by registered mail to the holder of a permit granted under this section and an opportunity to be heard, may suspend or revoke such permit if it appears that the holder thereof has violated any pertinent provision of sections two hundred and seventy to two hundred and seventy-seven, inclusive. Whoever violates any provision of this section shall be punished by a fine of not more than one hundred dollars."

have acquired good will of great value among local retail furniture dealers and consumers. Some of the upholstered furniture that is sold in this Commonwealth is manufactured here and some in other States, and some of the manufacturers whose factories are located outside the Commonwealth maintain usual places of business here. The copartnership has not applied for, nor been granted, any permit under the statute in question and does not intend to apply, although it is subject to the provisions of the statute if they are constitutional. The department of public health (hereinafter referred to as the department) has not issued, and does not believe it has authority to issue, any regulations under the statute. It has automatically issued permits under the statute to any "foreign" manufacturer of upholstered furniture who has made application and paid the required fee. It has not made, and does not intend to make, a preliminary examination of the business of any "foreign" manufacturer who is subject to the provisions of the statute, or of his furniture, as a condition precedent to the issuance of a permit. No examination is made of factories located outside the State before or after permits are issued to the manufacturers, and a prospective licensee is not required to submit specimens of furniture to the department for examination before a license is issued. The department never examines upholstered furniture manufactured in other States prior to the time it is offered here by a wholesaler or retailer. The department makes the same examination of furniture offered for sale by a wholesaler or retailer when it has been manufactured here as when it has been manufactured elsewhere. The department interprets the statute as providing that in cases where a prospective licensee has had his permit revoked, he is entitled to secure a new permit immediately upon the payment of the same fee that is required for the original permit, although the department retains the right to revoke the new permit upon further violation of "pertinent" provisions of §§ 270–277, inclusive, of G. L. (Ter. Ed.) c. 94.

Upon the basis of experience during the five months prior to March 9, 1940, and upon the basis of estimates for the

future, the department, in addition to what it would have spent had this statute not been enacted, will expend about $1,500 annually to meet the additional cost involved in enforcing it, and it will spend annually in connection with this and other statutes relating to upholstered furniture and bedding an amount not exceeding $6,500. There are several hundred different manufacturers residing without the Commonwealth and having no usual place of business here who manufacture upholstered furniture and ship it to this Commonwealth. The amount reasonably expected to be collected under the provisions of the statute, once it is in full operation, is in excess of $20,000 annually, and in the period from October 10, 1939, to February 23, 1940, before any attempt had been made vigorously to enforce it, $8,850 had been collected from foreign corporations and nonresidents "who were forced to comply with its provisions." Revenues received for permits under this statute from foreign manufacturers of upholstered furniture are not earmarked for any specific purpose, but are commingled with the general funds of the Commonwealth. The defendants, who are severally charged with administering and enforcing the provisions of the statute, are threatening to enforce its provisions against all retail dealers in the Commonwealth, including those who have dealt with the copartnership for many years, and the defendant commissioner has compiled and published a list of "foreign" manufacturers of upholstered furniture who have obtained permits under the statute and has circulated such a list among the local retail dealers. This list does not contain the name of the copartnership.

The defendants, in their brief, expressly state that no question is raised as to the plaintiffs' right to maintain this suit to determine the constitutionality of the statute. Waiver by the parties cannot confer jurisdiction over a cause where none exists, and it is the duty of the court to consider such a point on its own motion. *Warner* v. *Mayor of Taunton*, 253 Mass. 116, 118. *Golden* v. *Crawshaw*, 302 Mass. 343. We are of opinion, however, that the court has jurisdiction. As was said in *Criscuolo* v. *Department of*

*Public Utilities,* 302 Mass. 438, at page 440: "It is true that a bill in equity will lie to restrain public officers from inflicting damage upon the business or other property of a plaintiff under color of a statute or ordinance which is unconstitutional or otherwise void and so can afford no protection. . . . [see cases cited]. So it has been held that equity will enjoin the enforcement of burdensome State restrictions upon interstate commerce. *Western Union Telegraph Co.* v. *Andrews,* 216 U. S. 165. See *Terrace* v. *Thompson,* 263 U. S. 197, 214." *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 188. The court has jurisdiction of the subject matter in dispute and no objection has been made that the plaintiffs have a complete, adequate and plain remedy at law. See *First Congregational Society in Raynham* v. *Trustees of Ministerial Fund,* 23 Pick. 148, 153; *Hampden National Bank* v. *Hampden Railroad,* 246 Mass. 404, 408. Furthermore, it is by no means certain that the plaintiffs have an adequate remedy at law. *Cook* v. *Boston,* 9 Allen, 393. *Emery* v. *Lowell,* 127 Mass. 138. *Brown* v. *Nahant,* 213 Mass. 271. *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 282. *Bourjois, Inc.* v. *Chapman,* 301 U. S. 183. *Hale* v. *Bimco Trading, Inc.* 306 U. S. 375. See *Marconi Wireless Telegraph Co. of America* v. *Commonwealth,* 218 Mass. 558, 562; *Criscuolo* v. *Department of Public Utilities,* 302 Mass. 438. The plaintiffs have a direct interest in the subject matter of the suit, and we think it sufficiently appears that damage to their business is threatened under such peculiar circumstances as to give the court jurisdiction. *Beekman* v. *Marsters,* 195 Mass. 205. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470. *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262. *Truax* v. *Corrigan,* 257 U. S. 312. *Pierce* v. *Society of Sisters,* 268 U. S. 510.

We are of opinion that the statute in question is in violation of art. 1, § 8, of the Federal Constitution, in that it lays an unreasonable burden on interstate commerce. When the statute was enacted in 1939, said c. 94 already contained provisions relative to the manufacture and sale of articles of bedding or upholstered furniture. Briefly, they required

that the articles be marked so as to disclose their contents or component parts; prohibited the use of certain materials; provided for the licensing and regulation of establishments for the sterilization of feathers and other material; and contained provisions for enforcement. See G. L. (Ter. Ed.) c. 94, § 270 to § 277, inclusive, including the amendment to § 270 by St. 1937, c. 176, and § 270A to § 270C inserted by St. 1935, c. 439, and St. 1939, c. 196, § 2. Said § 270, as amended, provided, among other things, that the articles, hereinbefore mentioned, also should be marked with the name of the manufacturer or vendor. One apparent purpose of these sections of the statute was to afford information as to its composition to a purchaser buying such an article. *Commonwealth* v. *National Mattress Co.* 270 Mass. 238, 240. It would seem that the statute in question, said § 270D, was enacted by the General Court upon the theory that the existing provisions of law did not quite reach to the extent thought necessary to regulate and control the sale of bedding and upholstered furniture. See Legislative Documents, 1939, House, No. 71.

"Every presumption is to be indulged in support of the validity of a duly enacted statute. It is to be refused enforcement only in the event that its provisions cannot be interpreted in harmony with the fundamental law." *Ahmed's Case*, 278 Mass. 180, 190. *United States* v. *Carolene Products Co.* 304 U. S. 144. But although there may be no purpose on the part of a Legislature to violate the provisions of the Constitution, a statute enacted by it may, by its necessary operation, be destructive of rights granted and secured by the Constitution, and in such a case there is nothing for the court to do except to sustain the fundamental law by declaring the statute unconstitutional and void. *Minnesota* v. *Barber*, 136 U. S. 313, 319. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.* 303 U. S. 177, 185–186. Whatever the language of a statute may be, its purpose must be determined by its natural and reasonable effect. *Henderson* v. *Mayor of New York*, 92 U. S. 259, 268. *Commonwealth* v. *Moore*, 214 Mass. 19, 25.

It is well settled that the regulation of sales of articles to prevent fraud is within the legislative power, *Commonwealth* v. *Ferris*, 305 Mass. 233, 235–236, and cases cited, and the fact that the plaintiffs' products are made without the Commonwealth does not prevent the adoption of reasonable regulations relative to their sale here. *Mutual Film Corp. of Missouri* v. *Hodges*, 236 U. S. 248, 258. *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 517. *Pacific States Box & Basket Co.* v. *White*, 296 U. S. 176, 184. *Bourjois, Inc.* v. *Chapman*, 301 U. S. 183, 186. But it is also settled that no State can, consistently with the Federal Constitution, impose upon the products of other States, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory. *Guy* v. *Baltimore*, 100 U. S. 434, 439. *Machine Co.* v. *Gage*, 100 U. S. 676. *I. M. Darnell & Son Co.* v. *Memphis*, 208 U. S. 113. *Bethlehem Motors Corp.* v. *Flynt*, 256 U. S. 421. *Hale* v. *Bimco Trading, Inc.* 306 U. S. 375. *Park McLain, Inc.* v. *Hoey*, 19 Fed. Sup. 990.

The statute in question prohibits generally the sale of bedding or upholstered furniture manufactured without the Commonwealth by a manufacturer, or sold within the Commonwealth by a wholesaler, residing without the Commonwealth and having no usual place of business here, unless the tag, required by other sections of said c. 94, contains the serial number of a permit granted such manufacturer or wholesaler, which permit can be obtained only by the payment of an annual fee of $50. In other words, if there are two factories on adjoining lots in New Hampshire, in both of which bedding and upholstered furniture are manufactured for sale here, the one owned by a resident of New Hampshire, who has no usual place of business here, and the other by a resident of this Commonwealth, the former must conform to the requirement of the statute, as to obtaining a permit, and the latter need not. The former must pay $50 annually for a permit without which any sale in this Commonwealth of furniture manufactured by him

may subject the seller to a criminal prosecution. It is not unreasonable to assume that the failure of the "foreign" manufacturer to procure a permit will have the inevitable result that his goods will not find any local purchasers.

The defendants concede that the fee imposed "does not purport to bear any relation either to the cost of inspection or the cost of enforcing the act generally." Even if the statute in question could be regarded as one contemplating inspection of goods manufactured without the Commonwealth and which reasonably required inspection, this would not permit discrimination, the result of which would burden interstate commerce. *Great Northern Railway* v. *Washington*, 300 U. S. 154, 161. *Hale* v. *Bimco Trading, Inc.* 306 U. S. 375. But the defendants contend that the statute imposes the same standards and conditions of manufacture upon both residents and nonresidents, which are enforced against the former by virtue of territorial jurisdiction, by means of inspection, fines and imprisonment, and which are enforced against the latter, over whom territorial jurisdiction is lacking, by means of revocable permits. In considering this contention, the underlying purpose of the statute is to be considered, the right of the Commonwealth, in the exercise of its police power, to protect its citizens against fraud is to be taken into account, and the fact that articles manufactured without the Commonwealth, but brought here to be sold, are not immune from the proper exercise of the police power is also to be kept in mind. The defendants contend that the net result of the statute is to provide only a difference in the method of its enforcement, and that this difference is necessary because of the lack of territorial jurisdiction over nonresidents. But as the law stood before the enactment of the 1939 amendment, it contained carefully drawn provisions, hereinbefore referred to, designed for the protection of the purchasing public, violations of which were subject to the imposition of criminal penalties.

If, without the 1939 amendment, as contended by the defendants, the only way to enforce the law was to prosecute innocent retail dealers who bought improperly labelled materials in good faith from manufacturers or wholesalers

who were beyond the jurisdictional reach of the statute, we find in these circumstances no justification for the discrimination that would result if the 1939 statute should be held to be valid, and we cannot consider as an answer to these provisions that result in discrimination, that the possibility of such discrimination is so insignificant or trivial as to be passed unnoticed. It is to be observed in this connection that it is an agreed fact that "There are several hundred different individuals, partnerships or corporations, residing without the Commonwealth and having no usual place of business within the Commonwealth, which manufacture upholstered furniture and ship it to Massachusetts," and, furthermore, that "The plaintiffs are in active competition with manufacturers of similar furniture located both in Massachusetts and elsewhere," and that "Of the upholstered furniture sold in Massachusetts, some is manufactured in other States and some is manufactured in Massachusetts factories; and of the manufacturers whose factories are located outside Massachusetts some maintain usual places of business in Massachusetts."

It has been said that the context of a particular statute may justify distinctive treatment of phases of interstate commerce and that the circumstances may negative apparent discrimination in the difference of treatment. *Hale* v. *Bimco Trading, Inc.* 306 U. S. 375, 380. See *Osborn* v. *Ozlin*, 310 U. S. 53; *Baldwin* v. *G. A. F. Seelig, Inc.* 294 U. S. 511, 525–526. But we are of opinion that in the case at bar there is no room for distinctive treatment, and that the cases of *E. J. McLean & Co.* v. *Denver & Rio Grande Railroad*, 203 U. S. 38, and *Mintz* v. *Baldwin*, 289 U. S. 346, are distinguishable.

In the effort to reach the out of State manufacturers and wholesalers who come within the provisions of the statute in question, all such are placed upon the same footing regardless of whether any of them have failed to comply with the law as it stood prior to the enactment of the 1939 amendment. But this would make no difference as to the validity of the statute if the scheme as a whole comprehended by the statute was directed in a proper manner at

the evil sought to be remedied. *Kentucky Whip & Collar Co.* v. *Illinois Central Railroad,* 299 U. S. 334, 352, 353. But if, as contended by the defendants, the purpose of the statute is to reach for punishment out of State manufacturers and wholesalers, it is clear that the first exaction of the fee provided is not predicated on any prior fault whatever. It is a flat sum in no sense dependent upon the amount or value of goods shipped. See *D. E. Foote & Co. Inc.* v. *Stanley,* 232 U. S. 494. Any manufacturer or wholesaler, regardless of prior conduct, may, at any time, upon payment of $50 obtain a new permit, and, under the act as administered, the presence or absence of a permit is evidence merely of capacity and willingness to pay. In no sense of the word does the appearance of the number of the permit on the tag or markings which must accompany the goods, show past, or insure present, conformity with standards of health and safety which, in the opinion of the Legislature, are necessary. The requirement of a permit, however, even if for the purpose as contended by the defendants, is not laid upon all out of State manufacturers. No permit is required in the case of a factory outside the Commonwealth owned by a person who resides or has a place of business here. The defendants have suggested that these exclusions and inclusions are "so insignificant as not to shake the force of the proposition that the objective of the act is to establish an enforcement mechanism against nonresidents," and that, if the Legislature gave thought to such cases, it probably regarded them as so rare as not to call for legislation, and that it is possible that "such cases were simply overlooked." It appears, however, that the bill, as originally reported to the Legislature by the committee to which it had been referred, did not contain any reference to a manufacturer or wholesaler, "residing without the commonwealth and having no usual place of business within the commonwealth." These quoted provisions were inserted by amendments and bear the earmark of deliberation. See Legislative Documents, 1939, House, Nos. 71, 78; Journal of the House, 1939, pages 30, 167, 1011, 1210, 1223, 1233, 1397, 1670.

The defendants suggest that the required fee is in the

nature of a bond. But an annual fee is required. Apart from the difficulty of explaining one fee on the theory that it is a bond, the requirement of an annual fee, irrespective of past compliance, is in the nature of an exaction and bears no relation to the requirement of a bond.

The statute, as applied to manufacturers, requires the payment of the required fee as a condition precedent to the local sale of furniture manufactured outside the Commonwealth by a manufacturer who does not reside or have an usual place of business here. It does not require this exaction as a condition precedent to the local sale of furniture manufactured outside the Commonwealth by a manufacturer who has a usual place of business here; it is not required for the local sale of furniture manufactured outside the Commonwealth by a manufacturer who resides here. Compare *Commonwealth* v. *Crowell*, 156 Mass. 215, 216; *Commonwealth* v. *Strauss,* 191 Mass. 545, 554. Under the interpretation placed upon the act by the department, the manufacturer who has had his permit revoked is entitled to a new one immediately upon payment of $50 therefor, although the department retains the right to revoke the new permit upon further violations of the "pertinent" provisions of §§ 270–277 of said c. 94.

If the department should decline to issue a permit after the revocation of one already granted, and the statute were constitutional, the result would be that the goods of the manufacturer so refused a permit would be barred from sale in this Commonwealth, whereas the local manufacturer, upon violation of the statute, is subject merely to the punishment provided, and the out of State manufacturer, who has a place of business here, and the local manufacturer, who has an out of State factory, are exempted from the provisions of the act.

We are of opinion that the provisions of the statute in question amount to discrimination for which no reasonable explanation can be given and which no special circumstances can be said to negative. *Cook* v. *Pennsylvania*, 97 U. S. 566. *Walling* v. *Michigan*, 116 U. S. 446. *Minnesota* v. *Barber*, 136 U. S. 313. *Brimmer* v. *Rebman*, 138 U. S. 78. *Voight* v.

*Wright,* 141 U. S. 62.   *I. M. Darnell & Son Co.* v. *Memphis,* 208 U. S. 113.   *Bethlehem Motors Corp.* v. *Flynt,* 256 U. S. 421.   *Hale* v. *Bimco Trading, Inc.* 306 U. S. 375.   *Commonwealth* v. *Petranich,* 183 Mass. 217.   *Commonwealth* v. *Caldwell,* 190 Mass. 355.   *Park McLain, Inc.* v. *Hoey,* 19 Fed. Sup. 990.

The statute is loosely worded, but we think that at least it provides that any article of bedding or upholstered furniture manufactured without the Commonwealth by a manufacturer residing without the Commonwealth and having no usual place of business here cannot be sold here unless there is placed upon the tag, which is required for such articles, the name of such manufacturer and the serial number of the permit, which he must obtain from the department annually upon payment of $50. The constitutionality of the statute in this respect is the only question that is before us. It is unnecessary for us to consider any other questions. *Commonwealth* v. *Caldwell,* 190 Mass. 355, 357–358.

A decree is to be entered enjoining the defendants and each of them, as prayed for.

*Ordered accordingly.*