**INDEPENDENT SERVICE CORPORATION
v. TOUSANT et al.**
Civ. A. No. 2744.

District Court, D. Massachusetts.
June 23, 1944.

Edward C. Park, of Boston, Mass. (Withington, Cross, Park & McCann, all of Boston, Mass., of counsel), for plaintiff.

James E. Farley and Joseph S. Bacigalupo, Asst. Attys. Gen., of Commonwealth of Massachusetts (Robert T. Bushnell, Atty. Gen., for Commonwealth of Massachusetts, on the brief), for defendant.

Maurice M. Goldman, for American Federation of Labor and Massachusetts Federation of Labor, amicus curiæ.

WYZANSKI, District Judge.

This is a suit to enjoin the Chairman and the other 'members of the Industrial Accident Board of the Commonwealth of Massachusetts from enforcing Mass. G.L. (Ter.Ed.) c. 152, § 25D inserted in the General Laws by St. 1943 c. 529, § 7. The ground alleged is that this addition to the Workmen's Compensation Act deprives plaintiff of liberty and property in violation of the Fourteenth Amendment to the United States Constitution.

The section under attack became effective November 15, 1943. It provides that "No self-insurer or attorney acting in its behalf shall engage a service company or like organization to investigate, adjust, or

settle claims under this chapter [that is, the Workmen's Compensation Act of Massachusetts] or to represent it in any matter before the department [that is, the Industrial Accident Board of Massachusetts]. Any violation of this section shall constitute reasonable cause for revocation of the license of a self-insurer under section twenty-five A of this chapter."

Plaintiff is a Massachusetts business corporation. Since 1936 and until November 15, 1943 plaintiff had been engaged in the business of furnishing to employers electing not to insure under the Workmen's Compensation Act, and to others, services such as advising as to methods and appliances designed to prevent accidents to employees, investigating accidents to employees, arranging for the medical care of injured employees, adjusting and settling claims of employees and preparing statistical information and reports. (See defendant's answer, paragraph 3.) Plaintiff never undertook to represent employers before the Industrial Accident Board. Plaintiff's charter was not introduced in evidence. Defendants do not contend that plaintiff is engaged in ultra vires activities unauthorized by its charter.

Prior to November 15, 1943, when Section 25D became effective, plaintiff had sixteen clients who were self-insuring employers. From them it received annual payments which totaled approximately $18,-000. Two of these clients, who together paid annual fees of more than $4,000, have withdrawn their business from plaintiff largely on account of this statute. These withdrawals have caused plaintiff to lose profits at the rate of more than $2,000 a year. Other prospective clients have failed to give plaintiff business on account of this statute.

Prior to November 15, 1943 Massachusetts gave employers an election whether or not to insure under the workmen's compensation. Since November 15, 1943, the effective date of St. 1943, c. 529, Mass. G.L.(Ter.Ed.) c. 152, § 25A, Massachusetts requires virtually all employers to secure workmen's compensation either by insurance with some private company or by self-insurance in accordance with a license issued by the Massachusetts Industrial Accident Board.

Unless prohibited by law or interfered with by defendants, plaintiff would be able to secure from self-insurers contracts under which it investigated, adjusted and settled claims. These contracts would yield plaintiff net profits at the rate of at least $2,000 annually.

Since the effective date of Section 25D, by letters, public statements and otherwise, defendants, relying upon Section 25D, have interfered with plaintiff's securing such contracts and have threatened those who make such contracts to enforce the penalties prescribed by Section 25D.

The case presents these issues: (1) as a matter of statutory construction, does Section 25D apply to a self-insurer who engages plaintiff to investigate, adjust or settle claims; (2) does plaintiff have a locus standi to challenge the legislation; (3) has this Court jurisdiction to decide the controversy; and (4) is the effect of statute upon plaintiff a denial of its liberty or a deprivation of its property on the ground either (a) that the statute precludes plaintiff from engaging in a lawful calling or (b) that the statute makes an arbitrary and capricious discrimination against plaintiff.

■ Section 25D does not define the term "service company", or the phrase "investigate, adjust, or settle claims." Nor does any regulation of the Massachusetts Industrial Accident Board or any other administrative agency. There are no legislative committee reports or debates with respect to Section 25D. The definition of these concepts, therefore, becomes a question of law for the Court. The term "service company" embraces, at the least, any independent corporation which makes contracts with employers to investigate for them industrial accidents of their employees and to adjust or settle those claims. The phrase "investigate, adjust, or settle claims" includes investigations and subsequent procedures which are undertaken with the purpose of determining liability of the employer or damage to the employees under the Workmen's Compensation Act; and it also includes the process of adjusting or settling claims of such liability or damage. The phrase does not include investigations which are undertaken solely for the purposes of preventing future accidents or arranging for the medical care required by past accidents. Under this construction the statute applies to plaintiff and the business which it conducted before, and lost as a consequence of, the passage of Section 25D.

■ The next issue is whether plaintiff has a standing to challenge Section 25D.

The statute directs its prohibition to self-insurers and their attorneys, but not in terms to a service company, like plaintiff. But the effect of the operation of the statute upon the business of plaintiff gives it a locus standi to challenge the legislation. Stark v. Wickard, 321. U.S. 288, 303, 64 S.Ct. 559; Columbia Broadcasting System v. United States, 316 U.S. 407, 422, 62 S. Ct. 1194, 86 L.Ed. 1563; Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468;. Mueller v. Commissioner of · Public Health, 307 Mass. 270,. 274, 30 N.E.2d 217.

On the issue of · jurisdiction there are two subordinate categories : has this Court federal jurisdiction; and, is the case one within equity jurisdiction?

■ Admittedly, plaintiff's claim arises under the Constitution of the United States. Moreover, the previous findings show that the regulation embodied in Section 25D has been the proximate cause of losses to plaintiff at the rate of more than $2,000 each year. The regulation. is permanent legislation and presumably will have its effect on plaintiff for many years. The matter in controversy, therefore, exceeds, exclusive of interest and costs, the sum of $3,000. and is within the federal jurisdiction of this Court. Jud.Code § 24(1), 28 U.S. C.A. § 41(1); McNutt v. General Motors, etc., Corp., 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135; Scott v. Donald, 165 U.S. 107, 115, 17 S.Ct. 262, 41 L.Ed. 648. It is unnecessary to consider plaintiff's suggestion that, apart from the amount in controversy, the Court had federal jurisdiction by virtue of Jud.Code § 24 (14); 28 U.S.C.A. § 41 (14) as expounded in Douglas v. Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 882, 87· L.Ed. 1324, and Hague v.· C.I.O., 307 U.S. 496, 507–514, 59 S.Ct. 954, 83 L.Ed. 1423. However, it may be remarked, in passing, that since plaintiff is a corporation its right to invoke that section is not clearly established. Mr. Justice Stone's opinion in Hague v. C.I.O., 307 U.S. at page 527, first full paragraph, at pages 531, 532, 59 S.Ct. at pages 969, 971, 972, 88 L.Ed. 1423, as well as the decree in that. case, would indicate that a corporation never has a privilege, immunity or right of personal liberty sufficient to invoke jurisdiction under Jud. Code § 24 (14), 28 U.S.C.A. § 41 (14). Perhaps, however, the indication is misleading. It may be that if a corporation claimed that a. liberty. as: fundamental as free speech were involved, the corporation not only would be able to invoke the Fourteenth Amendment to safeguard its "rights" against deprivation by state process (Grosjean v. American Press Co., 297 U.S. 233, 244, second full paragarph 56 S.Ct. 444, 80 L.Ed. 660) but also would be able to invoke the jurisdiction of a United States District Court under Jud. Code § 24 (14), 28 U.S.C.A. § 41(14), regardless of the amount in controversy. Cf. Douglas v. Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 882, 87· L.Ed. 1324.

■ As to the equity jurisdiction of the Court, it might be sufficient to note that the parties have raised no objection on this score. Helvering v. Davis, 301 U.S. 619, 639, 640, 672, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319. But see Douglas v. Jeannette, supra. But, aside from that point, equity jurisdiction is sustainable upon the uncontradicted allegations of the pleadings. Paragraph 7 of plaintiff's complaint alleged "defendants have threatened and will continue to. threaten .to revoke the license of any self insurer who avails itself of the services of the plaintiff"; and defendants have answered "that they have stated that in accordance with the provisions of said chapter 152 they will revoke the license of any self insurer who violates the provisions of said section 25D." This plainly constitutes a threat by defendants to enforce the Act. It is a threat which is directed at plaintiff's business and which would cause that business irreparable injury, but which plaintiff cannot meet in a criminal proceeding or other action at law since plaintiff is only the indirect and not the direct object of the prohibition. Plaintiff, lacking any other adequate remedy, is, therefore, entitled to invoke the equity jurisdiction of this Court. Bourjois, Inc., v. Chapman, 301 U.S. 183, 185 lines 4 and 5, 57 S.Ct. 691, 81 L.Ed. 1027; Pierce v. Society of Sisters, 268 U.S. 510, 536, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Mueller v.· Commissioner of Public Health, 307 Mass. 270, 274, 30 N.E.2d 217.

■ One other preliminary point may ·be noticed. Plaintiff in open court abandoned any prayer for a temporary injunction or other form of interlocutory relief. Since the relief now sought is limited to an injunction ·at the end of the trial, the case is appropriate for determination by a single District· Judge. sitting without any associates. Smith v. .Wilson, 273 U.S. 388, .47· S.Ct. 385, 71 L.Ed. 699; Edelman v. Boeing, 289 U.S. 249, 53 S.Ct. 591, 77 L.

Ed. 1155; Douglas v. Jeannette, 319 U.S. 157, 160, 63 S.Ct. 877, 882, 87 L.Ed. 1324.

The central issue in the case is whether as here applied Section 25D denies plaintiff liberty or property in violation of the Fourteenth Amendment to the Constitution.

Plaintiff's contention has two main branches: first, that the section denies plaintiff the right to engage in a lawful calling; and second, that the section subjects plaintiff to an arbitrary discrimination. Spelled out, plaintiff's first point is that an important part of its business is adjusting claims of employees against their employers under the Workmen's Compensation Act; that in carrying on this part of its business, plaintiff is engaging not in the practice of the law, but in another useful and lawful calling; that Section 25D purports absolutely to prohibit plaintiff from carrying on this part of its lawful business; and that such legislation is repugnant to the Fourteenth Amendment since the Amendment invalidates a state prohibition which takes away a business, although the Amendment does not foreclose reasonable state regulation of the business. Plaintiff's second point is that Section 25D selects capricious limits for its operation; it applies only when the client is a self-insurer, not, for example, when the client in an insured employer or an insurance company; it applies only when the service is performed by a "service company or like organization", not, for example, when it is performed by an individual, or a partnership of lawyers, or by a department or division of the employer's own business; and it applies only to claims under the Workmen's Compensation Act, not, for example, to other claims made against the employer either by an employee or some other person not in a relationship of employment.

There are two somewhat different and, in a sense, independent answers to this challenge. One turns on the extent of legislative power over employers who do not have policies of insurance complying with the Workmen's Compensation Act; the other turns on the extent of legislative power over those who engage in the adjustment or settlement of industrial accident claims.

■■■ The fundamental principles sustaining legislative power over employers in connection with compensation for accidents to workmen have been elaborated in what are now familiar decisions. It is authoritatively settled that to secure adequate compensation to workmen for industrial accidents, the state has power to create a compulsory insurance system for all employers. Under such a system the state, for example, can require every employer either to take out a policy of insurance or to make with public authorities a deposit of securities, New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1 Ann.Cas.1917D, 629. Or the state can go further and require every employer to pay money into a state fund to be used to compensate workmen for their claims. Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642; Thornton v. Duffy, 254 U.S. 361, 41 S.Ct. 137, 65 L.Ed. 304; Opinion of the Justices, 309 Mass. 562, 567, 35 N.E.2d 1. Instead of exercising the complete power to compel every employer to use an outside insurance company or an outside fund, the state may give an employer the choice not to insure with an outside company or fund on condition that he foregoes certain relevant rights. We may assume arguendo that the state could not require a free-lance employer as a price of his choice of independence to forego an entirely irrelevant right, such for example as his right to vote for public officers or his right to remove a case to the federal courts. Cf. Terral v. Burke Construction Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352, 21 A.L.R. 186. But the cases make it clear that the state can require him to forego such rights and privileges of an employer as can reasonably be thought to preclude employees from recovering as fair compensation as they would receive under the Workmen's Compensation Act. Thus, where an employer elects not to take out insurance under a Workmen's Compensation Act, the legislature can deprive him of his common-law defenses (a) that the employee was negligent, (b) that the injury was caused by the negligence of a fellow employee, or (c) that the employee had assumed the risk of injury. New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann.Cas. 1917D, 629; Mass. G.L.(Ter.Ed.) c. 152, § 67; Young v. Duncan, 218 Mass. 346, 349, 106 N.E. 1; Opinion of the Justices, 309 Mass. 571, 595, 596, 34 N.E.2d 527. Also the legislature can deprive him of his right to protect himself from the consequences of liability to his employees by securing insurance which does not fall within the usual

type of workmen's compensation policy. Mass. G.L.(Ter.Ed.) c. 152 § 54A;[1] see Alecks' Case, 301 Mass. 403, 406, 17 N.E.2d 173; Opinion of the Justices, 309 Mass. 571, 596, 34 N.E.2d 527. It is no great step from depriving an employer of his right to insure as he pleases to depriving him of his right to use a service company to investigate, adjust or settle claims of employees under the Workmen's Compensation Act.

The effect of service companies and like adjusters upon the effectiveness of systems of workmen's compensation has been the subject of reasonable differences of opinion. There are some who regard such adjusters as efficient and able to secure better than average compliance with law. See Harold W. Teaf, Jr., Self-Insurance of Workmen's Compensation in Pennsylvania, University of Pennsylvania (1934) pp. 77, 78, 108, 109. There are others who regard service companies as detrimental to the interests of employees and the welfare of the workmen's compensation system. They assert that a service company plan can survive only if the employer pays out less in settlements than he would have to pay as a premium to an insurance company; that the service company is therefore under an economic inducement to pay workmen low amounts as compensation for their injuries; that this economic inducement is not counterbalanced as in the case of lawyers by the professional discipline of the bar, or as in the case of insurance companies by the supervision of public authorities, or as in the case of settlement departments of the employer's own business by neighborly sympathy and long standing ties of mutual interest; and that the low payments under a service company plan not only prevent employees from getting uniform and hence fair compensation but also induce employers either not to join or to withdraw from a broad insurance scheme which would diversify and spread risks and would improve the administration and effectiveness of the Workmen's Compensation Act. Commonwealth of Massachusetts, Senate Report No. 456, February 1939, Report of the Special Recess Commission Appointed for the Purpose of Investigating Workmen's Compensation, Silicosis and Hazardous Employments, pp. 709, 11, 17; Commonwealth of Massachusetts, Report of the Attorney General for the Year Ending November 30, 1938, Pub.Doc. No. 12, pp. 8, 9; Samuel B. Horovitz and Joseph Bear, Would A Compulsory Workmen's Compensation Act Without Trial By Jury Be Constitutional In Massachusetts? 18 B. U. Law Rev. 1, 8-14; S. L. Sabel, The Uncompensated Industrial Injury, 36 Mich. L. Rev. 935, 943-945, 948; Clarence W. Hobbs, Workingmen's Compensation

---

[1] Mass.G.L.(Ter.Ed.) c. 152 § 54A inserted by St.1935, c. 425, in effect declares void a contract insuring an employer against his common-law liability to the type of employee who might have been brought within the coverage of the Workmen's Compensation Act. Although the constitutionality of this statute has not been expressly sustained by the Massachusetts Supreme Judicial Court, considered dicta in Alecks' Case, 301 Mass. 403, 17 N.E.2d 173, and an Opinion of the Justices, 309 Mass. 571, 596, 34 N.E. 2d 527, make it plain that that Court regarded the statute as valid. In Alecks' Case an employer employed Alecks in an occupation within the coverage of the Workmen's Compensation Act. The employer did not take out a policy under the Act; but it applied to an insurance company and paid it a premium to issue a policy naming the employee Alecks as the insured and naming the employer as the beneficiary and insuring the employee against certain injuries arising in the course of or out of the employee's employment. The policy did not refer to the Act; it did not cover precisely the same injuries or give precisely the same protection as the Act; it did not give any role to the Industrial Accident Board; and it did not purport to deprive the employee of any of his rights at common law. Alecks assigned the policy to the employer. Subsequently Alecks was injured in the course of his employment. He filed a claim of compensation with the Industrial Accident Board. The narrow ratio decedendi was that the Industrial Accident Board has jurisdiction only under policies of insurance falling within G.L.(Ter.Ed.) c. 152, § 1 et seq.; this policy was not within that chapter; the Board therefore had no jurisdiction. But the Court through Mr. Justice Lummus made significant remarks as to c. 152, § 54A and the validity of the policy. It was his considered view that for the purpose of carrying out the Massachusetts public policy that all employers should insure under the Workmen's Compensation Act, the Commonwealth could provide that employers who do not insure under that Act but elect to retain their common-law liability cannot insure against that liability. 301 Mass. page 406, 17 N.E.2d at page 175.

Insurance (2d Ed. 1939), p. 57; Sir Arnold Wilson and Hermann Levy, Workmen's Compensation (Ox. Univ. Press, 1939) vol. I, pp. 92-95.

This Court is not called upon to decide on the merits of this debate between these opposing schools of thought. "One's own opinion as to the wisdom of a law must be wholly excluded when one is doing one's judicial duty." Osborn v. Ozlin, 310 U.S. 53, 66, 60 S.Ct. 758, 763, 84 L.Ed. 1074. The wisdom of having a law like section 25 D is for the legislature. All this Court has any power to question is whether there was any reasonable basis upon which the legislature could reach the decision which it did. In the light of the legislative material and professional authorities just cited, the response to that question is plain: the legislature could reasonably conclude that the use of service companies by self-insurers precluded employees from receiving as fair compensation as they would receive under the Workmen's Compensation Act. Having reached that conclusion, the legislature was not limited to an enactment which merely regulated the use of service companies by self-insurers; it had the power absolutely to prohibit their use. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; Powell v. Pennsylvania, 127 U.S. 678, 685, 686, 8 S.Ct. 992, 1257, 32 L.Ed. 253. Cf. United States v. Carolene Products Co., 304 U.S. 144, 151, 58 S.Ct. 778, 82 L.Ed. 1234.

The same conclusion follows if the issue is approached from the standpoint of legislative power over those who adjust or settle industrial claims.

It may be assumed that the business of investigating, adjusting and settling workmen's accident claims is not in all its aspects the practice of law. Yet the business is not unrelated to the practice of law. A competent investigator and adjuster must be familiar at least in broad outline with the terms of the Workmen's Compensation Act and the leading judicial and administrative decisions thereunder; he must be capable of forming an expert opinion as to liability and damage; and he may in some instances be called upon to draft and supervise the execution of releases and similar documents. Usually he is retained in a representative capacity to reconcile adversary interests which if not adjusted are likely to be litigated. His work gives him the opportunity either to protect or to over-reach persons in the poorer classes who are usually uninformed and uninstructed as to the rights. The appropriate performance of his tasks involves ethical and social considerations almost to the same degree as economic, health and technical legal considerations. The adjuster's function is part of the mechanism of justice in modern society. Under such circumstances the legislature may reasonably conclude that the calling of an adjuster may not be practiced by a corporation or like organization. Compare the cases involving the exclusion of corporations from the practice of law and dentistry cited in Merrick v. American Security & Trust, 71 App. D.C. 72, 107 F.2d 271; Semler v. Oregon State Board of Dental Examiners, 294 U. S. 608, 611, 55 S.Ct. 570, 79 L.Ed. 1086. And this legislative power is even clearer where the exclusion is limited to the adjustment of claims involving "a right created by statute" for the protection of a class of persons deemed by the legislature to be in a disadvantageous position and unlikely to be represented by counsel. Compare Yeiser v. Dysart, 267 U.S. 540, 541, 45 S.Ct. 399, 69 L.Ed. 775, upholding the regulation of fees of attorneys in Workmen's Compensation Act cases.

The fact that Section 25D is so circumscribed as to cover only service companies and like organizations, and then only when acting for self-insurers and in relation to the Workmen's Compensation Act, is not a capricious discrimination making the legislation invalid under the Fourteenth Amendment. The legislature may plausibly have thought that outside corporations were more likely than others to overreach employees; and that this danger existed in its most acute form where the client was not an insurance company subject to supervision. The rule is firmly established that the legislature "may strike at the evil where it is most felt * * * or where it is most practicable to deal with it." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 519, 520, 57 S.Ct. 868, 877, 81 L.Ed. 1245, 109 A.L.R. 1327.

This rule rests upon almost self-evident principles. A legislature must be allowed considerable leeway when it embarks upon a program of reform. It often knows more about the subject than a court and has a diversity of talents and a plenitude of resources which enables it to draw with some skill the lines of exclusion and

82

inclusion. To be sure the line finally drawn by the legislature is bound to be arbitrary in the same sense that the difference between day and night, or minority and full age, is arbitrary. But any political realist or social scientist could justify arbitrariness of that type. It is the inevitable and intended condition of legislation that during the legislative deliberations there shall be responses to different interests. Sometimes the response takes the form of embracing a new class of subjects or persons. At other times it takes the form of excluding a class. To deny the legislature such alternatives would impose upon political processes an ironclad choice of all or nothing. It is the lesson of the ages that leg over leg the dog gets to Dover. At any rate, this Court is not disposed to invalidate a reform measure because it follows the conservative practice of gradually reaching what is thought to be a desired result.

Decree for the defendants with costs.